**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

PATRICIA SABOL,

               Plaintiff,

     vs.                           Civil Action 2:14-cv-543
                                    Judge Marbley
                                    Magistrate Judge King

FORD MOTOR COMPANY,

               Defendant.

<u>OPINION AND ORDER</u>

This matter is before the Court on *Defendant Ford Motor Company's Motion to Transfer Venue Under 28 U.S.C. § 1404(a)*, ECF 23 ("*Motion to Transfer*"). For the reasons that follow, the *Motion to Transfer* is **GRANTED**.

**I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

In October 2012, plaintiff, a Delaware citizen, purchased a 2013 Ford Escape Class Vehicle ("the vehicle" or "plaintiff's Escape") from Garnet Ford, Inc., in Chadds Ford, Pennsylvania. *Class Action Complaint*, ECF 2, ¶ 13 ("the *Complaint*"). The vehicle is equipped with a 2.0 liter engine that incorporates Ford's EcoBoost technology. *Id*. Defendant Ford Motor Company ("defendant" or "Ford"), a Delaware corporation with its principal place of business in Dearborn, Michigan, manufactured, sold, distributed, advertised, marketed and warranted the vehicle. *Id*. at ¶¶ 9, 13, 22.

In late July 2013, plaintiff's Escape, "without warning, shutdown completely while operating at highway speeds." *Id*. at ¶ 14. During this shutdown, the "Engine Fault Service Now" light illuminated on the

1

dashboard. *Id*. Plaintiff pulled over to the side of the road and restarted the vehicle. *Id*. She "immediately" brought the vehicle to Garnet Ford, but the dealership was unable to re-create the defect. *Id*. Garnet Ford kept the vehicle for several days while waiting for a replacement part, *i.e.*, the throttle body part. *Exhibit A*, pp. 1-4 (copies of records from Ford's customer service department), attached to *Declaration of James Engle*, ¶ 3 ("*Engle Declaration*"), which is attached to *Motion to Transfer*. During that time, plaintiff's father, George Sabol, who also owned a 2013 Escape, contacted defendant on plaintiff's behalf, asking Ford to reimburse her for the cost of a rental car while Garnet Ford repaired her vehicle. *Exhibit A*, pp. 2-3. Garnet Ford ultimately replaced or repaired certain parts on the vehicle. *Engle Declaration*, ¶ 5; *Exhibit C*, p. 7 (records from Ford's Analytical Warranty System reflecting, *inter alia*, that "replace[d] the TCBP CACT MAPT sensor and pigtail wiggle test harness and CK PIDS for map sensor baro tip PRS boost repair splice for signal return road test and confirm repair"), attached thereto; *Complaint*, ¶ 15. On August 16, 2013, plaintiff's father advised Ford that "his daughter's vehicle is running great[.]" *Exhibit A*, p. 4.

On February 20, 2014, plaintiff's vehicle, with no warning, went into idle mode while she was operating the vehicle; the vehicle would not accelerate to more than 10 miles per hour without being restarted. *Complaint*, ¶ 16; *Exhibit A*, p. 10. Plaintiff returned the vehicle to Garnet Ford, but the dealership was unable to replicate the problem. *Complaint*, ¶ 16; *Exhibit A*, p. 10. After contacting Ford's customer

care line, plaintiff was advised that "if there are no codes in the computer to show which system had a fault and the dealership is not able to duplicate the concern it can be difficult to find the proper direction to take." *Exhibit A*, p. 11.  Ford did not repair the vehicle, but agreed to provide plaintiff with a Premium Care Extended Service Plan ("ESP"). *Id.; Complaint*, ¶ 16.  On February 27, 2014, George Sabol advised Ford that plaintiff was nevertheless afraid to drive the vehicle because it had not been repaired.  *Exhibit A*, p. 12. Ford recommended that he or plaintiff take the vehicle to another dealer for a second opinion. *Id*.  George Sabol agreed, but rejected Ford's assistance in arranging that second opinion. *Id*.

On March 11, 2014, Ford again spoke with George Sabol and asked if the vehicle had been inspected for a second opinion. *Id*. According to Ford, George Sabol responded that a second opinion would be sought "if the concern happened again[.]" *Id*.  Ford offered a three-year, 45,000 mile, limited maintenance plan on the vehicle, which George Sabol accepted. *Id*.  He advised that he would contact Ford if additional concerns arose. *Id*.

On June 9, 2014, plaintiff filed this action on behalf of herself and classes of plaintiffs, asserting products liability claims in connection with defendant's EcoBoost 1.6L and 2.0L engines. *See Complaint*. Plaintiff specifically asserts a claim under 15 U.S.C. § 2301 *et seq.*, and claims of breach of express and implied warranty, unjust enrichment, and unfair trade practices in violation of Pennsylvania law, 73 Pa. C.S.A. §§ 201-1 *et seq*. *Id*.  In support of

her claims, plaintiff alleges, *inter alia*, that Ford issued Technical
Service Bulletin 13-7-5 ("the TSB"), which relates to her vehicle, the
2013 Ford Escape.  *Id.* at ¶ 41.  The TSB specifically advised:

> Some 2013 Escape vehicles equipped with a 1.6L or 2.0L
> Gasoline Turbocharged Direct Injection (GTDI) engines may
> exhibit difficult to start, runs rough at start up, crank
> no start, lack of power, loss of RPM or hesitation concerns
> with diagnostic trouble codes (DTCs) P0106, P0236, or
> P06A7.  These conditions may be caused by corrosion in
> connector terminals of the Turbocharger Boost Sensor/Charge
> Air Coller Sensor (TCBP/CACT/MAPT), or a wiring concern in
> signal return splices for TCBP/CACT/MAPT and MAP sensors.
> Some vehicles may also exhibit a drivability concern along
> with an Engine Fault Service Engine Now message in the
> Instrument Panel Cluster (IPC) message center, without any
> DTCs in self test.

*Id. See also Exhibit D*, p. 1 (TSB), attached to *Engle Declaration*.

On the same day that plaintiff filed her *Complaint*, a summons was
issued to defendant.  ECF 3.  The next day, on June 10, 2014,
plaintiff took her vehicle to Springfield Ford Lincoln located in
Springfield, Pennsylvania ("Springfield Ford").  *Exhibit C*, p. 11
(copy of record from Ford's Analytical Warranty System reflecting
service at Springfield Ford Lincoln), attached to *Engle Declaration*.
Springfield Ford identified a "bad connection inside splices[.]"  *Id.*
The vehicle's splices were replaced and it was noted that "no issues
pres[e]nt at this time[.]"  *Id.*

On June 17, 2014, *Plaintiff Patricia A. Sabol's Notice of Related
Case*, ECF 4 ("*Notice of Related Case*"), was filed.  Plaintiff
submitted this notice pursuant to S.D. Ohio Civ. R. 3.1(b), which
provides in relevant part:

> **(b)  Related Cases.** An initiating party shall identify on
> the civil cover sheet or other form provided by the Clerk
> any previously filed case or cases in the District that the
> party knows or believes to be related.  After the initial

4

filing of a case, any party may call to the Court's attention any related case(s) by filing a notice of related case(s).  For purposes of this Rule, civil cases may be deemed related by the Court if they:

> (1) Arise from the same or substantially identical transaction, happening, or event; or
>
> (2) Call for a determination of the same or substantially identical questions of law or fact; or
>
> (3) Would entail a substantial duplication of effort and expense by the Court and the parties if heard by different Judges; or
>
> (4) Seek relief that could result in a party's being subject to conflicting orders of this Court.

(c) This Rule is intended to provide for the orderly division of the business of the Court and does not grant any right to any litigant.

Plaintiff submitted her notice in order "to alert the Court of a related case currently pending in this District before the Honorable Algenon L. Marbley . . . *Davisson v. Ford Motor Co.*, No. 2:13-cv-00456 (S.D. Ohio) (filed May 10, 2013) (the "*Davisson* action")." *Notice of Related Case*, p. 1.  Plaintiff characterized the actions as related, contending, *inter alia*, that "[t]he only difference between the cases is the size of the engines (*Davisson* involves only the 3.5 liter engine, while *Sabol* involves the 1.6 and 2.0 liter engines), and the identity of the affected vehicle models." *Id*. at 2.  On June 23, 2014, the two cases were assigned to the same trial judge. *Related Case Memorandum*, ECF 5.

Counsel for defendant entered an appearance on July 18, 2014. ECF 6, 7, 8.  Upon unopposed motion, defendant was granted until August 8, 2014 in which to file a response to the *Complaint*.  ECF 9, 10.  On that date, defendant filed its answer, denying liability and

5

asserting a counterclaim for breach of contract in connection with plaintiff's alleged failure to arbitrate warranty-related disputes. *Defendant Ford Motor Company's Answer to Plaintiff's Class Action Complaint, Affirmative Defenses and Counterclaim*, ECF 18 ("*Answer and Counterclaim*").

On September 19, 2014, defendant filed the *Motion to Transfer*. The Court conducted a preliminary pretrial conference with all parties on September 24, 2014 and issued an order establishing a case schedule the same day. *See Preliminary Pretrial Order*, ECF 24. Plaintiff responded to the motion. *Plaintiff Patricia Sabol's Response Opposing Defendant Ford Motor Company's Motion to Transfer Venue*, ECF 25 ("*Opposition*"). With the filing of *Defendant Ford Motor Company's Reply Brief in Support of Motion to Transfer Venue Under 28 U.S.C. § 1404(a)*, ECF 26 ("*Reply*"), is now ripe for resolution.

## II.    STANDARD

The *Motion to Transfer* seeks to transfer this action to the United States District Court for the Eastern District of Pennsylvania[1] pursuant to 28 U.S.C. § 1404(a), which provides in pertinent part:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]

This district has previously employed a two-step analysis in resolving motions filed pursuant to § 1404(a). *See, e.g., DRFP, LLC v.*

---

[1] Plaintiff mistakenly represents that defendant also seeks, alternatively, to transfer this action to the United States District Court for the District of Delaware. *See, e.g., Opposition*, pp. 2, 5-7.

*Republica Bolivariana De Venezuela*, 945 F. Supp. 2d 890, 902 (S.D. Ohio 2013); *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp.2d 845, 849–50 (S.D. Ohio 2007).  First, the threshold determination is whether the action might have been brought in the proposed transferee court.  *Id.* "An action 'might have been brought' in a transferee court if: (1) the court has jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *SKY Techs. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp.2d 286, 291 (S.D. Ohio 2000) (citations and punctuation omitted).  Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"

Next, the Court must decide whether, considering all relevant factors, "the balance of convenience and the interest of justice strongly favors transfer." *DRFP, LLC*, 945 F. Supp.2d at 902.  *See also Kay*, 494 F. Supp.2d at 849-50.  This second step of the analysis requires consideration of both the parties' private interests as well as the public interest in the administration of justice. *DRFP, LLC*, 945 F. Supp.2d at 902; *Kay*, 494 F. Supp.2d at 849-50.  The moving party bears "the burden of establishing the need for a transfer of venue." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 165 (S.D. Ohio 2012).  Ultimately, the decision whether to transfer venue is left to

7

the discretion of the trial court.  *Id.*; *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991).

**III.  DISCUSSION**

In the case presently before the Court, the parties first disagree whether defendant has met the threshold inquiry, *i.e.*, whether venue would be proper in the Eastern District of Pennsylvania. More specifically, the parties disagree whether "a substantial part of the events giving rise to the claim" under 28 U.S.C. § 1391(b)(2) occurred in that forum.  *Motion to Transfer*, pp. 7-8;[2] *Opposition*, p. 5; *Reply*, pp. 2-4.  After carefully considering the arguments and the record, the Court agrees with defendant that it has met this threshold requirement.  The transaction that underlies plaintiff's claims, *i.e.*, the purchase of the vehicle from Garnet Ford, occurred in Pennsylvania.  *Complaint*, ¶ 13.  Plaintiff alleges that she "had a number of discussions with sales people at Garnet Ford about the engine" and that the sales people "touted" "the Escape's fuel economy, reliability, and safety[.]"  *Id.* at ¶¶ 19-20.  Therefore, these purported misrepresentations or deceptive communications regarding the the vehicle occurred in Pennsylvania.  Indeed, plaintiff alleges that she "was damaged because she paid more for her 2013 Ford Escape than she should have.  Plaintiff's purchase price was based upon the value of a vehicle as represented by Ford and was free from defects."  *Id.* at ¶ 21.  Routine maintenance and repair attempts also occurred in Pennsylvania.  *Id.* at ¶¶ 13-16.

---

[2] The Court refers to the pagination that appears at the bottom of the page.

Moreover, the facts forming the basis of plaintiff's breach of warranty claim occurred in Pennsylvania. Plaintiff obtained the warranty in Pennsylvania and that state's law governs the warranty. *Id*. at ¶¶ 13, 19-20, 73-75; *Exhibit C* (copies of records from Ford's Analytical Warranty System relating to the vehicle). Plaintiff alleges that defendant acted in breach of the warranty in Pennsylvania when Ford knowingly sold her a defective vehicle and when Ford failed to or refused to repair the vehicle. *Id*. at ¶¶ 76-77. For all these reasons, the Court is satisfied that venue would be proper in the Eastern District of Pennsylvania because "a substantial part of the events giving rise to the claim" occurred in that forum.

The parties next disagree whether the private and public factors weigh in favor of transfer. The Court shall address these factors in turn.

**A.    Private Factors**

In this second step of the analysis, the private interests to be considered, in addition to the plaintiff's choice of forum, include the following:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious and inexpensive.

*DRFP, LLC*, 945 F. Supp.2d at 902. In addition, "'[t]he convenience of the witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor

in ruling on a motion to transfer under 29 U.S.C. § 1404(a).'"
*Residential Fin. Corp. v. Jacobs*, No. 2:13-cv-1167, 2014 U.S. Dist.
LEXIS 42745, at *16 (S.D. Ohio Mar. 24, 2014) (quoting 15 C.A. Wright,
A.R. Miller & E.H. Cooper, Fed. Prac. & Proc. § 3851 (4th ed.)). *See
also Slate Rock Constr., Co., Ltd. v. Admiral Ins. Co.*, No. 2:10-cv-
1031, 2011 U.S. Dist. LEXIS 97122, at *24 (S.D. Ohio Aug. 30, 2011)
(considering, *inter alia*, the defendant's choice of forum and whether
the claim arose in another forum).

> 1.  **Plaintiff's chosen forum**

Plaintiff contends that her choice of forum should be accorded
substantial deference. *Opposition*, p. 6.  Defendant, however, argues
that this factor is entitled to less deference in this case because
plaintiff did not file in her home forum, this forum has no connection
with the matter in controversy and plaintiff seeks to represent a
nationwide class. *Motion to Transfer*, pp. 8-9; *Reply*, p. 5.

Defendant's arguments are well-taken.  While "a plaintiff's
choice of forum should be given weight when deciding whether to grant
a motion to change venue, this factor is not dispositive." *Lewis v.
ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998).  Indeed, less
consideration is given to this choice if the forum is not plaintiff's
residence. *See*, *e.g.*, *Kay*, 494 F. Supp.2d at 850 (collecting cases);
*Dayton Superior Corp.*, 288 F.R.D. at 165-66.  Moreover, "'[w]hen the
cause of action has little connection with the chosen forum, the
plaintiff's choice of forum is to be given less weight than such
choice would be given otherwise.'" *DRFP, LLC*, 945 F. Supp.2d at 902-

03 (quoting *Armco, Inc. v. Reliance Nat. Ins. Co.*, No. C -1-96-1149, 1997 U.S. Dist. LEXIS 7880, 1997 WL 311474, at *3 (S.D. Ohio Mar 30, 1997)).  *See also Residential Fin. Corp.*, 2014 U.S. Dist. LEXIS 42745, at *16 ("As this Court has recognized, however, when none of the relevant conduct occurred in the plaintiff's chosen forum, this factor has less weight.").  Finally, deference to a plaintiff's chosen forum is weakened where the plaintiff seeks to represent a nationwide class. *See*, *e.g.*, *Klopfenstein v. Fifth Third Bank*, No. 1:12CV2007, 2012 U.S. Dist. LEXIS 156063, at *6-7 (N.D. Ohio Oct. 31, 2012); *Jewell v. Aaron's, Inc.*, No. 1:11-cv-02314-DCN, 2012 U.S. Dist. LEXIS 22315, at *11 (N.D. Ohio Feb. 21, 2012); *Wayne County Emples.' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009).

In the case presently before the Court, plaintiff does not reside in this district; she is a Delaware resident.  *Complaint*, ¶ 13. Moreover, as discussed *supra*, none of the events giving rise to her claims took place in Ohio.  Instead, many of the events occurred in Pennsylvania.  *See*, *e.g.*, *id*. at ¶¶ 13-6; 19; 21; 74.  Finally, plaintiff asserts claims on behalf of a putative nationwide class. *See*, *e.g.*, *id*. at ¶¶ 1, 52-101.  All of these reasons therefore "negate[] the deference ordinarily given to a plaintiff's choice of venue."  *Kay*, 494 F. Supp.2d at 852.

### 2. Access to sources of proof and convenience of the parties

Plaintiff argues that ease of access to certain documents and records located at Ford's headquarters in Michigan favor this forum

rather than far-away Pennsylvania. *Opposition*, p. 7. According to plaintiff, Ohio is more convenient because "[t]he design, manufacture, and testing of the EcoBoost Engines" primarily occurred at Ford's headquarters in Dearborn, Michigan; in its assembly plants in Kentucky, Michigan and Illinois; and in "its engine plants, including its plant in Cleveland, Ohio." *Id*. Plaintiff also argues that defendant wrote and issued Ford's warranty from its headquarters in Michigan. *Id*. at 7-8.

Defendant, however, disagrees that the location of evidence favors Ohio. *Motion to Transfer*, p. 11; *Reply*, pp. 8-9. Defendant argues that all of the dealer records related to plaintiff's and her father's vehicles - and the vehicles themselves — are located in Pennsylvania. *Motion to Transfer*, p. 11. Defendant also contradicts plaintiff's assertions that certain events occurred in nearby states, representing that the Ford Escape's wiring harness, which is a component at issue in this litigation, was manufactured in Tunesia and not in Michigan or Kentucky. *Reply*, pp. 8-9 (citing *Exhibit B*, attached thereto).

Although documents and vehicles can be shipped to any forum, plaintiff has identified no evidence currently located in Ohio. Should the action remain in this district, then, all parties would have to produce evidence from other states. On the other hand, it appears that all dealer records and information related to plaintiff's and her father's vehicles are already located in Pennsylvania. Accordingly, consideration of this factor slightly favors transfer to

12

the Eastern District of Pennsylvania.

> 3. **Convenience of non-party witnesses and availability of compulsory process for attendance of unwilling witnesses**

Defendant identifies several nonparty witnesses outside this forum who could not be compelled to testify in this Court because they likely reside more than 100 miles away from this courthouse. *Motion to Transfer*, pp. 9-11 (citing, *inter alia*, Fed. R. Civ. P. 45(c)(1)). Defendant first identifies Garnet Ford personnel in Chadds Ford, Pennsylvania, whose testimony could address plaintiff's allegations regarding the sale of her vehicle, *see Complaint*, ¶¶ 13-17, as well as their inspections of the vehicle, repairs performed on the vehicle and their communications with plaintiff and her father regarding the vehicle. *Motion to Transfer*, p. 10. Defendant further contends that personnel from Springfield Ford in Springfield, Pennsylvania, may also testify regarding the repairs performed on the vehicle on June 10, 2014 and their interactions with plaintiff. *Id*. Defendant also identifies plaintiff's father, who apparently resides in Kennett Square, Pennsylvania, as a potential witness who can testify regarding his communications with Ford regarding his daughter's vehicle as well as his own experiences with his 2013 Ford Escape, which was also purchased and repaired at Garnet Ford in Chadds Ford, Pennsylvania. *Id*. at 10-11 (citing *Exhibit B*, *F*, *H*, attached to *Engle Declaration*). Defendant also identifies additional potential witnesses from Brian Hoskins Ford, another dealership located in Pennsylvania. *Id*. at 11 (citing *Exhibit H*, p. 2, attached to *Engle Declaration*). According to

defendant, none of these witnesses could be compelled to testify at a trial in this Court.  *Id.* (citing Fed. R. Civ. P. 45(c)(1)).  Finally, defendant represents that it is unaware of any potential witness who is located in Ohio.  *Id.*

Plaintiff questions whether these nonparty witnesses are "essential" and whether these witnesses will actually be unavailable for trial.  *Opposition*, pp. 8-10.  Plaintiff also suggests that the dealership employees "are likely contractually obligated to provide assistance to Ford, including providing testimony in discovery or at trial[.]"  *Id.* at 9-10 (citing Ford's Sale & Service Agreement, attached thereto as *Exhibit A*).  In any event, plaintiff argues, "Courts often allow the testimony of proposed witnesses to be preserved through deposition testimony."  *Id.* at 8-9 (citing *Ralph v. Exxon Mobil Corp.*, No. G-05-655, 2006 WL 2266258, at *2 (S.D. Tex. Aug. 8, 2006).  Moreover, witnesses located in Michigan are closer to Ohio than to Pennsylvania.  *Id.* at 8.  Finally, plaintiff takes the position that discovery from an absent putative class member, such as plaintiff's father, is generally disfavored.  *Id.* at 10.

Ford, however, disagrees that employees of independent Ford dealerships are "contractually obligated" to testify in Ohio and does not know at this stage in the litigation whether third-party witnesses would be willing to travel to Columbus for trial.  *Reply*, pp. 7-8.  Furthermore, defendant argues, plaintiff's father is more just an absent putative class member and plaintiff has not represented that he will be available for trial.  *Id.* at 8 n.3.  Defendant also asks the

14

Court to take judicial notice that there are more nonstop flights between Detroit and Philadelphia on a typical weekday than between Detroit and Columbus. *Id*. at 8 (citing *Exhibit A* (printouts from Expedia.com), attached thereto). Finally, defendant argues that plaintiff has identified no third-party witnesses who actually resides in Ohio. *Id*.

Defendant's arguments are well-taken. The record is uncontroverted that there are numerous non-party witnesses from the dealerships located in Pennsylvania. Because some of these witnesses may testify regarding, *inter alia*, the representations and information provided to plaintiff at the time that she purchased her vehicle as well as repairs made to the vehicle, *see*, *e.g.*, *Motion to Transfer*, p. 10, the Court is persuaded that these witnesses are essential to the fair resolution of plaintiff's claims. *Cf. Egrsco, LLC v. Evans Garment Restoration, LLC*, No. 2:09-CV-358, 2009 U.S. Dist. LEXIS 94507, at *18-19 (S.D. Ohio Oct. 8, 2009) (stating that the location of essential, rather than non-essential third-party witnesses is a factor to weigh in considering a motion to transfer). It is not at all clear to this Court that dealership employees can be compelled to testify at a trial in Ohio.

In addition, plaintiff's father – far from being simply an absent putative class member – will be an important third-party witness in this litigation. Significantly, plaintiff has not assured her father's availability for trial in Ohio. *See* Fed. R. Civ. P. 45(c)(1). Finally, although some witnesses are located in Michigan, it does not

appear that travel to Pennsylvania would be materially more inconvenient for them.  Taking this record as a whole, and considering the number of essential witnesses residing in Pennsylvania, consideration of this factor also weighs in favor of transfer to the Eastern District of Pennsylvania.

### 4.  Other considerations

Plaintiff also opposes defendant's motion because it is "belated[.]"  *Opposition*, pp. 6-7.  Specifically, plaintiff complains that defendant "failed to object to Plaintiff's motion to relate this case to an earlier related proceeding" and that the *Motion to Transfer* was filed four months after this action was initiated, after defendant filed an answer and a counterclaim, and after defendant participated in the  pretrial conference.  *Opposition*, pp. 6-7.

This Court disagrees.  As an initial matter, plaintiff did not file a "motion to relate," but rather a "*Notice of Related Case*."  *See* ECF 4.  In other words, this filing was not a motion to which the Local Rules provide the opportunity to respond.  In any event, that notice – and the Court's determination that this case and *Davisson* are related, ECF 5, - were filed and made prior to service of process on defendant and prior to the appearance of counsel for defendant. ECF 6, 7, 8.  Based on this record, the *Motion to Transfer* is not "belated."

### B.  Public Factors

The Court must also consider the public interest in resolving the *Motion to Transfer*.  *See*, *e.g.*, *Slate Rock Constr., Co., Ltd. v. Admiral Ins. Co.*, No. 2:10-cv-1031, 2011 U.S. Dist. LEXIS 97122, at

16

*24 (S.D. Ohio Aug. 30, 2011).  Factors to consider include:

> the enforceability of the judgment; practical
> considerations that could make the trial easy, expeditious,
> or inexpensive; the relative administrative difficulty in
> the two fora resulting from court congestion; the local
> interest in deciding local controversies at home; the
> public policies of the fora; and the familiarity of the
> trial judge with the applicable state law in diversity
> cases.

*Id.* (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir.
1995)).

### 1.    Enforceability of the judgment

Plaintiff contends that both this district and the Eastern
District of Pennsylvania could enforce a judgment against any party.
*Opposition*, p. 11.  Defendant disagrees, noting that enforcement of
its counterclaim for monetary damages against plaintiff would likely
have to be enforced in plaintiff's state, Pennsylvania. *Id.* at 14.

However, any federal district court may enforce a judgment
entered by another federal district court.  *See* 28 U.S.C. § 1963.
Therefore, regardless of which district renders judgment in this
action, this Court is satisfied that the judgment could be enforced in
either district.  Accordingly, this factor is neutral.

### 2.    Practical considerations that make the trial, easy, expeditious or inexpensive

In addressing this factor, the parties disagree on the relevance
of the *Davisson* action.  *Motion to Transfer*, pp. 14-15; *Opposition*,
pp. 11-12; *Reply*, p. 6-7.  By way of background, the *Davisson* action
was filed on May 10, 2013 as a putative class action in which the
plaintiffs, representing themselves and a nationwide class of

17

plaintiffs and classes of plaintiffs from eighteen (18) states, claim that defendant Ford's EcoBoost 3.5 liter engine technology is not as expressly or impliedly warranted. *Amended Complaint*, 2:13-cv456, ECF 16. The *Davisson* plaintiffs specifically asserted claims under the Magnuson-Moss Federal Warranty Act, 15 U.S.C. § 2301 *et seq*., and the common law and statutes of various states, including O.R.C. §§ 1345.01 *et seq*., 1302.26 and Ohio's law of negligence and breach of contract. *Id*. The *Davisson* plaintiffs also asserted claims of fraud. *Id*.

Plaintiff concedes that the *Davisson* action involved a different size engine (3.5 liter engine as opposed to the 1.6 and 2.0 liter engines in the instant action) and does not dispute defendant's contention that the *Davisson* action alleged defects in different vehicle components and involved different TSBs. *See Motion to Transfer*, pp. 14-15; *Opposition*, pp. 11-12; *Reply*, pp. 6-7.[3] Therefore, plaintiff's contention that "[t]here will likely be a significant overlap in discovery" that will "streamline[]" the discovery process, *Opposition*, p. 12, is not supported by the present record. In any event, Ford has already represented to plaintiff's counsel and this Court on more than one occasion that it "will make available to Plaintiff Sabol all relevant discovery materials that Ford produced in the *Davisson* litigation." *Reply*, p. 7. Finally, and significantly, this Court dismissed the *Davisson* action on September

---

[3] The related case memorandum entered by this Court is merely administrative in nature and does not confer any rights on plaintiff in opposing the request to transfer venue. *See* S.D. Ohio Civ. R. 3.1(c) ("This Rule is intended for the orderly division of the business of the Court and does not grant any right to any litigant.").

3, 3014.  *Opinion and Order*, 2:13-cv456, ECF 56.[4]

Accordingly, this factor is neutral.

### 3. Court congestion

Defendant argues that, although there are more cases pending in the Eastern District of Pennsylvania, "federal case management statistics demonstrate that the median time from filing to disposition for civil cases is shorter in the Eastern District of Pennsylvania than in this Court (8.7 months compared to 9.6 months)." *Motion to Transfer*, p. 13 (citing *Exhibit 2* (printout of statistics taken from http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-march-2014.aspx), attached to *Declaration of John M. Thomas* ("*Thomas Declaration*"), attached to *Motion to Transfer*). Plaintiff characterizes this factor as "largely irrelevant" where, as here, a pretrial schedule has already been established. *Opposition*, p. 12. Plaintiff also suggests that a transfer of the action may result in additional delay "due to the potential re-litigation of these same issues." *Id.*

No trial date has yet been set in this case. *See Preliminary Pretrial Order*, ECF 24, p. 4 ("This case will be available for final pretrial conference in August 2016, or as soon thereafter as the Court's calendar permits."). Case congestion could delay setting a case for trial. Therefore, based on the statistics cited by defendant, this factor slightly favors transfer to the Eastern

---

[4] Contrary to plaintiff's contention that the *Davisson* action had "several rounds of dismissal motions[,]" *Opposition*, p. 11, only one motion to dismiss was filed and ruled on by the Court. *See Motion to Dismiss*, 2:13-cv-456, ECF 31; *Opinion and Order*, 2:13-cv-456, ECF 56.

District of Pennsylvania.

### 4. The local interest in resolving this controversy

Defendant argues that this factor favors transfer because a substantial part of the events giving rise to plaintiff's claims occurred in the Eastern District of Pennsylvania. *Motion to Transfer*, p. 12; *Reply*, p. 9. Plaintiff, however, insists that this factor is neutral because the relief sought "would affect residents of both Pennsylvania and Ohio, and thus both fora have an interest in the outcome of this controversy." *Opposition*, p. 11.

As set forth *supra*, a substantial portion of the events underlying plaintiff's claims took place in Pennsylvania, including the alleged representations made to plaintiff during the sale of her vehicle and attempts to repair the vehicle. Conversely, plaintiff has identified no operative facts that occurred in Ohio and no named plaintiff resides in this state. This factor therefore weighs strongly in favor of transferring the action to the Eastern District of Pennsylvania. *See*, *e.g.*, *Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, No. 2:12-cv-263, 2012 U.S. Dist. LEXIS 135211, at *11 (S.D. Ohio Sept. 21, 2012) (granting motion to transfer venue where, *inter alia*, Connecticut had a greater interest in resolving the dispute than Ohio because the disputed contract was negotiated and executed in Connecticut; the alleged conduct occurred in that forum; and one of the original parties to the contract was a Connecticut corporation).

### 5. Public policies

Neither party is aware of any public policy favoring one forum

over another and both parties agree that this factor is neutral. *See Motion to Transfer*, p. 14; *Opposition*, p. 11.

      **6.   The forum familiar with governing law**

Plaintiff asserts claims on behalf of a Pennsylvania and a nationwide class under both state and federal law. *See generally Complaint*. Both parties agree that Pennsylvania state law governs plaintiff's state law claims. *Motion to Transfer*, pp. 12-13; *Opposition*, p. 13; *Reply*, p. 9. Plaintiff concedes that this fact "slightly supports" a Pennsylvania forum, but contends that this factor should be given minimal weight because this case presents "standard consumer protection and breach of warranty claims [that] will not require the Court to address any novel legal theory." *Opposition*, p. 13.

"A diversity case should be decided by a court which is most conversant with the applicable state law." *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F.Supp. 1316, 1318 (S.D. Ohio 1991). In the case presently before the Court, the Eastern District of Pennsylvania is more familiar with Pennsylvania law. This factor favors transfer of the action. *See, e.g.*, 2011 U.S. Dist. LEXIS 97122, at *32 ("While this Court could apply Pennsylvania law, this factor suggests that transfer to Pennsylvania is appropriate.").

According, considering the record as a whole, the balance of factors weighs in favor of transferring this action to the Eastern District of Pennsylvania. Although plaintiff's choice of forum normally militates against transfer, this choice is given little

weight where, as here, plaintiff seeks to represent a nationwide class and has filed the action in a state other than her home forum. Moreover, as discussed *supra*, the convenience of the parties and Pennsylvania's greater interest in resolving this dispute favor transfer of the action. Under these circumstances, defendant has met its burden of showing that this matter should be transferred.

**WHEREUPON**, *Defendant Ford Motor Company's Motion to Transfer Venue Under 28 U.S.C. § 1404(a)*, ECF 23, is **GRANTED**. It is **ORDERED** that the Clerk transfer this action to the United States District Court for the Eastern District of Pennsylvania.

November 19, 2014                          *s/Norah McCann King*
                                           Norah M$^c$Cann King
                                           United States Magistrate Judge

22